UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

DEBORAH A. DAVIDSON,

                        Plaintiff,

      -against-

THE LAGRANGE FIRE DISTRICT and the BOARD OF
FIRE COMMISSIONERS OF LAGRANGE FIRE
DISTRICT ,

                    Defendants.

------------------------------------------------------------------------X

**ECF CASE**

VERIFIED
COMPLAINT

Index No.:
08 CV 03036 (RJS)

Jury Trial Demanded On
All Issues

Plaintiff, DEBORAH A. DAVIDSON, by her attorneys, the Law Offices of Louis D.

Stober, Jr., LLC, respectfully alleges:

## PURPOSE OF ACTION

1.      Ms. Davidson commences this action for the purpose of seeking appropriate

remedies for employment-based discrimination, for retaliation for having complained of age, sex,

gender, and disability discrimination, intentional and negligent infliction of emotional distress,

and violations of the firefighter compensation and retirement laws in New York State.

## PRELIMINARY STATEMENT

2.      Defendants, the LaGrange Fire District ("FD") and the LaGrange Board of Fire

Commissioners of LaGrange Fire District ("Board") (collectively, "District" or "Defendants"),

deliberately discriminated against Davidson based on sex, gender, age, disability, and in

retaliation for actions taken to preserve her rights secured by the Americans with Disabilities Act

("ADA"); the Age Discrimination in Employment Act ("ADEA"); Title VII of the Civil Rights

Act of 1964 ("Title VII"); 42 U.S.C. sections 1983, 1985, 1986, and 1988; the Rehabilitation Act section 504 ("Rehabilitation Act"); and the New York State Executive Law section 290 et. seq. ("Human Rights Law"); Defendants also denied Davidson her privileges and benefits under New York State General Municipal Law section 207-A ("207-A").

3.     Ms. Davidson is a fifty year old woman and a long-time employee of the Defendants.  As a firefighter, Ms. Davidson worked to distinguish herself by maintaining extensive qualifications and sharing her knowledge with others.  Ms. Davidson loved her job and her career as a firefighter.  Despite her hard work, however, Defendants treated Ms. Davidson malevolently, intending to remove the only qualified career female firefighter from its ranks because of her resistance to *quid pro quo* arrangements, her age, her gender, her disability and her complaints of unequal treatment.

4.     Defendants fostered a working environment permeated with harassment and retaliation.  As the only full time woman working shifts at the FD, the Defendants forced Ms. Davidson to sleep in a storage closet. The Deputy Chief refused to let her wear her choice in safety shoe, as he allowed men to do, just because he did not like the shoe. When Ms. Davidson injured herself in the line of duty as a fire fighter, Defendants treated her differently than other, uninjured, younger, male firefighters and paramedics, making up policy as they went along to force her to exhaust her sick leave entitlements and lose her paramedic certification.  When she complained of unequal treatment based on age, gender, and disability, Defendants further retaliated against her by denying her promotional opportunities.

5.     To the casual observer, Defendants can offer cursory reasons for why they took each and every action against Ms. Davidson.  However, what can not be explained away is why each and every allegedly "legitimate" policy affected only Ms. Davidson in its execution, or

why several of the Defendant's policies conflicted with the laws of New York State. Upon further examination, it becomes clear that Defendants have deliberately, intentionally, and with discriminatory purpose singled Ms. Davidson out, treated her differently from younger, male, uninjured firefighters and medical personnel, and sought to harass her and create obstacles that eventually removed her from service to the public as a firefighter.

6.     When Ms. Davidson originally filed her EEOC complaint in February of 2007, she hoped for the opportunity to return to work as a firefighter. Defendants' continued refusal to comply with 207-A has denied Ms. Davidson proper treatment for her knee injury which could return her to work.  Nonetheless, she continues to be involved with the operations of the FD, participating in Board meetings, applying for promotions, and participating in union activities. Through their discrimination and retaliation against Ms. Davidson, Defendants have achieved their ultimate goal – to remove Davidson from her position as a firefighter, for which she deserves recourse and a remedy, and for which Defendants deserve to be penalized and held accountable.

## JURISDICTION AND VENUE

3.     This Court has original subject matter jurisdiction of this action as a Federal Question under 28 U.S.C. section 1331, and as an action for declaratory judgment under 28 U.S.C. sections 2201 and 2202.

4.     Ms. Davidson invokes the jurisdiction of this Court pursuant to the Age Discrimination Employment Act of 1967, 29 U.S.C section 621; the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101-12213, 28 U.S.C. section 1343; Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000 et. seq. (as amended); 42 U.S.C. sections 1983, 1985, 1986, and 1988; and the Rehabilitation Act section 504, 29 U.S.C. section 794; and Article

15 of the New York State Executive Law section 290 et. seq. and section 207-A of the New York General Municipal Law pursuant to principles of pendent jurisdiction.

5.    Venue lies in this district in that the Ms. Davidson resides within the State of New York, Dutchess County, Defendants' place of employment is within the State of New York, Dutchess County, and the actions complained of occurred in the State of New York, Dutchess County.

## THE PARTIES

6.    At all times relevant herein, Plaintiff **DEBORAH A. DAVIDSON** is a U.S. citizen, 50 years of age, (date of birth August 16, 1957), female, and a resident 10 Orchard Road, Poughkeepsie, NY 12603.

7.    At all times relevant herein, Defendant **THE LAGRANGE FIRE DISTRICT**, with offices at 504 Freedom Plains Road, Poughkeepsie, NY 12603, its subsidiaries and affiliates, was and is now an employer within the meaning of Section 701 (b) of Title VII because it engages in an industry affecting commerce, employs more than the requisite number of employees under Title VII, the ADEA, the ADA, Article 15 of the NYS Executive Law and other statutes as alleged herein, and employed Davidson as a firefighter.

8.    At all times relevant herein, Defendant **BOARD OF FIRE COMMISSIONERS OF LAGRANGE FIRE DISTRICT**, with offices at 504 Freedom Plains Road, Poughkeepsie, NY 12603, was and is now an employer within the meaning of Section 701 (b) of Title VII because it engages in an industry affecting commerce, employs more than the requisite number of employees under Title VII, the ADEA, ADA, Article 15 of the NYS Executive Law and other statutes as alleged herein, and employed Davidson as a firefighter.

## ADMINISTRATIVE PROCEDURES

9.      On November 21, 2006, Ms. Davidson filed a Verified Notice of Claim with Defendants.

10.     On or about February 8, 2007, Davidson, through her attorneys, contacted the State Division of Human Rights and filed a complaint alleging discrimination by Defendants for discrimination based on her age and disability ("Exhibit A").

11.     By letter dated August 20, 2007, Ms. Davidson, through her attorneys, requested from the Equal Employment Opportunity Commission ("EEOC") the right to sue Defendants. (Exhibit B).

12.     On or about November 26, 2007, the EEOC referred the case to the Department of Justice and indicated that the EEOC would close the case. (Exhibit C).

13.     On or about December 26, 2007, the Department of Justice issued to Davidson notice of right to sue. (Exhibit D.)

14.     On or about March 14, 2008, the EEOC issued a Notice of Right to Sue. (Exhibit E.)

15.     Pursuant to the aforementioned notices of right to sue, Davidson timely commenced the instant suit.

## FACTS

16.     Plaintiff Deborah Davidson is a 50 year old (date of birth August 16, 1957) female firefighter.

17.     Ms. Davidson began her career with the LaGrange Fire District as a volunteer firefighter.

18.     Ms. Davidson began working as a paid on-call relief firefighter in 1991.

5

19.     In or about 1994, Ms, Davidson received her certification as a New York State paramedic.

20.     Ms. Davidson was the District's first on-staff paramedic.

21.     The District used Ms. Davidson's status as a paramedic to begin its Advanced Life Support ("ALS") program.

22.     On or about September 1, 1997, Ms. Davidson became a full time paid firefighter for the District.

*First Injury and Beginning of Defendants' Discrimination and Harassment*

23.     On or about September 18, 1999, Ms. Davidson injured her knee while removing a "stair chair" from an ambulance compartment.

24.     Ms. Davidson reported the injury and treated it on the scene.

25.     Three days later, Ms. Davidson sought medical treatment for swelling and inflammation.

26.     Ms. Davidson's doctor placed her on light duty and suggested physical therapy and an MRI.

27.     In or about December, 1999, a medical examiner for the Defendants affirmed Ms. Davidson's injury, treatment, and light duty status.

28.     The District asserted that it had no light duty stations.

29.     The District's policy prior to March of 2006 permitted firefighters to hold a light duty job elsewhere if out on injury.

30.     Ms. Davidson's doctor recommended that she receive treatment for her knee that the District denied.

31.   District policy prior to March 2006 dictated the use of sick leave to cover time off duty to recover from job-related injuries.

32.   District policy prior to March 2006 provided that once a firefighter depleted sick leave to recover from an injury, vacation or personal days were then used to cover the time.

33.   Under this policy, the District returned leave time once a firefighter returned to work.

34.   The District followed this policy for all male firefighters.

35.   The District did not follow the above policy for Ms. Davidson because Defendants did not restore her used leave, which resulted in the loss of all of her sick time.

36.   In or about 2000, Deputy Chief of the FD, Shawn Murray, informed Ms. Davidson that the District did not follow 207-A.

37.   In or about 2000, Deputy Chief Murray informed Ms. Davidson that if she depleted all of her benefit time, she would no longer receive pay and could subsequently lose her position.

38.   On or about March 21, 2000, Davidson underwent surgery for her left knee.

39.   The District denied covering further, recommended surgery for her knee injury.

40.   Ms. Davidson received donations of sick leave from others to continue her salary while out due to injury.

41.   The District stripped Ms. Davidson of her paramedic status and her keys while out on injury.

42.   The District did not strip the paramedic status or keys of any other firefighter or paramedic during his time out due to injury in the line of duty.

43.     The District made it difficult for Ms. Davidson to retain paramedic status by instituting conflicting policies.

44.     The District implemented a "policy" regarding paramedic certification in December of 2000, in response to Davidson's complaints.

45.     Defendants advised Ms. Davidson of another recertification "policy" in or about June of 2001.

46.     On or about May of 2000, Davidson filed a grievance under the District's collective bargaining agreement ("CBA") to protest the District's removing her from paramedic status because of her injury.

47.     After Davidson filed this grievance, the District ceased accruing personal, sick, and vacation time as provided for in the CBA for Ms. Davidson.

48.     The District told Ms. Davidson that because she was not at work she could not accrue benefit time.

49.     Defendants denied Ms. Davidson benefit accruals on the basis of discriminatory animus, to harass, retaliate, and demean her.

50.     The District used Ms. Davidson's former status as a paramedic, however, to secure New York State approval to provide paramedic services.

51.     Davidson flew to Phoenix, AZ, for another surgery to her knee in January of 2001.

52.     After the surgery, Ms. Davidson went through complete firefighter rehabilitation with a personal trainer.

53.     Davidson's doctor prescribed a specialized pair of padded "bunker pants" to protect her left knee from further injury.

*Denial of Promotion to Lieutenant*

54.    In 2000, the District notified eligible candidates on the Promotional List that it had a Duty Lieutenant position become available.

55.    Ms Davidson placed in the top three score slots on the competitive test for Duty Lieutenant.

56.    Ms. Davidson was a qualified applicant for the Duty Lieutenant position.

57.    A firefighter with paramedic status receives a yearly stipend.

58.    A firefighter with Duty Lieutenant status receives a yearly stipend.

59.    During her interview for Duty Lieutenant in or about 2000, the FD told Ms. Davidson that she could not hold a paramedic position and the position of Duty Lieutenant because each post held a separate stipend.

60.    During Ms. Davidson's interview for Duty Lieutenant, in 2000, the Board told Ms. Davidson that in the event that the new Duty Lieutenant was off or out, the "Acting" Duty Lieutenant would be Paul Olivet, and not her.

61.    Ms. Davidson had seniority and received a higher test score on the Duty Lieutenant exam than Paul Olivet, a non-disabled male under forty years of age.

*Ms. Davidson's Return to Work; Continuing Harassment and Retaliation by Defendants*

62.    On or about July 5, 2001, Davidson returned to work.

63.    The District refused to provide Ms. Davidson with the prescribed "bunker pants."

64.    Upon her return from injury leave on or about July 5, 2001, the District required Ms. Davidson to complete a full scale re-training on firefighting equipment and perform a total of 25 ambulance calls (ten basic and fifteen advanced life support) without paramedic pay to re-qualify for paramedic status.

65.    Defendants have required no other paid fire fighter or paramedic to complete such re-training.

66.    Other volunteer firefighters, all male, have not had to re-qualify on firefighting equipment despite the fact that they have not used the equipment in over a year, unlike Ms. Davidson.

67.    The District rescinded its policy of paying overtime for attending and covering the costs of Davidson's Advanced Level recertification classes.

68.    Other paramedics' Advanced Level recertification classes are paid for by the District.

69.    The Worker's Compensation Board determined Ms. Davidson returned to full duty with a 20% scheduled loss to her left leg.

70.    The District received over $33,000 from Worker's Compensation for Ms. Davidson's injury.

71.    Defendants provided no part of the Worker's Compensation award to Ms. Davidson for the 20% loss of use of her left leg from her line of duty injury.

72.    In January of 2002, Howard Adams, the District's EMS Administrator, during an audit of continuing medical education ("CME") credits by the Hudson Valley Regional EMS Medical Advisory Committee ("Region"), stated that he did not have all of the required paperwork for paramedic certification and that Davidson was not a practicing paramedic for LaGrange.

73.    Ms. Davidson in fact completed CME credits and provided such documentation to the District prior to Howard Adams' meeting with the Region.

74.    The misrepresentation of Ms. Davidson's accumulated credits by Howard Adams caused the Region to suspend her certification.

75.    The Region certification is required in addition to the New York State certification for licensed paramedics.

76.    To regain certification, the Region required Davidson to submit copies of the required documentation that she had previously submitted to LaGrange and take an examination.

77.    One year after returning to full duty as a firefighter, on or about July 2002, the District continued to require permission from Davidson's surgeon for her to attend any outside trainings in addition to her work as a firefighter.

78.    Davidson provided permission slips from her doctor to attend Firefighter Survival and Child Safety Seat Inspector trainings.

*Further Injury; Continuing Harassment and Retaliation by Defendants*

79.    On or about January of 2004 Davidson twisted and sprained her ankle when her steel-toed boot stuck in a frozen rut on the scene of a fire call.

80.    On the day of the January 2004 injury, an ambulance transported Ms. Davidson from the scene to the emergency room for evaluation and treatment.

81.    The District charged the thirteen days Ms. Davidson required to recover from the line of duty injury to sick leave.

82.    On or about June of 2004, Davidson lacerated her finger while putting a hose back on the engine, requiring four stitches in the emergency room on the day of the injury.

83.    The twelve days Ms. Davidson required to recover from the June, 2004 line of duty injury were charged to sick leave.

11

84.    The District announced that it would open three new Duty Lieutenant positions on or about December of 2003.

85.    Ms. Davidson thus resigned her paramedic position to pursue the promotion to Duty Lieutenant in or about January 2004.

86.    Thereafter, in or about December 2004, the District closed the position of Duty Lieutenant without filling any of the three positions.

87.    In 2004, the District also changed its policy to allow a firefighter to hold two reduced stipend positions, if a fire fighter held more than one position with a stipend.

88.    In 2004, when Ms. Davidson learned the District no longer planned to hire Duty Lieutenants, she inquired as to how she could regain her paramedic status.

89.    The District failed to advise Davidson in a timely manner how to regain her paramedic status.

90.    To return to her paramedic status, the District required that Ms. Davidson sign a document binding her to serve the District as a paramedic for an indefinite amount of time.

91.    Davidson refused to sign such a document.

92.    Defendants asked no other certified paramedics to sign a binding contract for their services.

93.    On or about January 9, 2007, the District reopened a Duty Lieutenant position based on a new list with nine qualified candidates.

*The District Denies Davidson Privileges, Continues to Harass and Retaliate Against Her*

94.    The Deputy Chief prohibited Davidson from wearing a new pair of safety shoes to work because he did not like them.

12

95.    Upon Ms. Davidson's request, the Safety and Health Committee approved the steel toed safety shoe and recommended it to FD officials.

96.    The shoes fit all the requirements for safety shoes as set forth in the collective bargaining agreement and were purchased from the District's safety shoe provider.

97.    Regardless, the Deputy Chief still refused to allow Davidson to wear the approved shoes on duty.

98.    The Deputy Chief allowed men to wear safety-sneaker type shoes that deviated from the traditional safety shoe.

99.    On or about March 8, 2005, Davidson slipped and fell in the parking lot of Station 1.

100.    Ms. Davidson reported the injury but treated herself.

101.    On or about May 5, 2005, Davidson approached the EMS Administrator for the District, Michael Benenati, about reinstatement as a paramedic.

102.    On or about December 2005, Benenati notified her that she needed to perform an additional 15 ambulance calls for reinstatement, without pay.

103.    By requiring this training for Davidson, the District forced her to accumulate twice as many supervised calls as newly certified paramedics.

104.    Ms. Davidson has maintained her certification as a New York State Paramedic since 1993, and assisted training every paramedic on the LaGrange staff.

105.    On or about June 5, 2005, Davidson lost one shift when she was transported from a fire scene to the hospital for swelling in her knee.

106.    Ms. Davidson's treating physician recommended that she work light duty.

107.    Ms. Davidson did not take any time off of work and continued to work full-time because she did not have enough sick days to cover her absence.

108.    Physical therapy and lymphatic drainage, begun in June 2005 and continuing weekly, have not been covered by Defendants for this on-the-job injury.

109.    These medical treatments are a part of the recommended course of treatment by Ms. Davidson's doctors for her full recovery and return to work as a fire fighter.

110.    On or about October 11, 2005, Davidson had surgery on her left knee to remove loose bodies and clear up inflammation from her March 2005 injury.

111.    The District charged Ms. Davidson thirteen days of sick time for this surgical treatment for her line of duty injury.

***Ms. Davidson Returns to Work to Suffer Greater Harassment and Retaliation by Defendants***

112.    Ms. Davidson returned to work on or about November 7, 2005.

113.    At this point in 2005 Ms. Davidson exhausted all of her leave time and could not be out longer to recover from her surgery.

114.    On or about November, 2005, the Deputy Chief, Shawn Murray, required Davidson to wear an Emergency Medical Technician ("EMT") patch.

115.    Ms. Davidson's skills as a New York State certified paramedic were far more extensive than those of an EMT.

116.    Ms. Davidson, for the previous eight years of service with the FD, wore no EMT certification patch on her uniform.

117.    Wearing an EMT patch while qualified as a paramedic prevented Ms. Davidson from assisting with advanced paramedic skills while on the scene of serious calls.

118.   Wearing an EMT patch while qualified as a paramedic misrepresented to the public Ms. Davidson's medical skills and qualifications.

119.   The Defendants hired the only other female career staff paramedic because of her *quid pro quo* relationship with a Board member.

120.   The only other career staff female paramedic has not been required to follow the steps for EMS training or training on all fire equipment.

121.   The District gave the only other career staff female paramedic a special exception to District policy for her to pass the physical examination requirements, allowing her eight attempts instead of the standard one reexamination opportunity.

122.   The District has given preferential treatment to career staff female paramedics on a prohibited sexual *quid pro quo* basis.

123.   On or about December of 2005, Davidson began re-training for paramedic status.

124.   On or about January 4, 2006, the District charged Davidson nine days of sick leave after she suffered a contusion to the left knee at a structure fire.

125.   On or about March, 2006, the Deputy Chief instructed Davidson that she no longer had sick time available for leave and that she must use vacation or personal time.

126.   Male firefighters had most of their sick or other leave returned to them for absences due to injuries sustained on the job, and received full pay during their time out.

127.   On or about March, 9, 2006, Ms. Davidson's doctor ordered that she remove herself from duty on because of persistent swelling in the knee and instability.

128.   Davidson's treating physician has approved her for light duty.

129.   The District instructed Ms. Davidson that if she wished to return to paramedic status in the District, she would need to complete a full fifteen training calls again.

130.    The District refused to count Ms. Davidson's completion of thirteen calls towards this goal before her March, 2006 injury.

131.    This further requirement, applicable solely to Ms. Davidson, brought Ms. Davidson's total number of required supervised training calls to fifty-five.

132.    Ms. Davidson's total number of required supervised training calls is almost four times the normal requirement for any EMS provider.

133.    On or about October 12, 2006, Davidson received an IME by the District's doctor, who determined that she has a total loss of 40% to the left leg.

134.    Upon information and belief, other EMTs have not had to perform additional trainings despite the fact that they have not used the equipment or been on a call in over a year.

135.    Ms. Davidson, unlike her male counterparts, is the only paramedic who has been subject to additional training and required to follow all the alleged steps of EMT and paramedic training.

136.    Most recently, on or about January 8, 2007, the EMS Administrator from LaGrange, Michael Benenati, caused Davidson to lose her Paramedic certification with the Hudson Valley Regional EMS Medical Advisory Committee for a second time, by presenting an empty folder during the audit of CME credits, despite having documentation for at least 20.5 hours of the 24 CMEs that Davidson attended.

137.    To re-certify as a paramedic, Davidson must against submit documentation previously submitted to LaGrange and take yet another exam.

*The District Provides Unequal Accommodations for Ms. Davidson*

138.    Since 2001, the District forced Ms. Davidson to sleep in disparate sleeping quarters separate and unequal from the men, although there is adequate room to create

partitioned, equal sleeping quarters for all the firefighters.

139.   Male firefighters sleep in a separate area where there is restricted access.

140.   The male sleeping area is only open during the day.

141.   The male sleeping area has pull-down hide-a-beds.

142.   The male sleeping area has a large TV, a radio and scanner.

143.   Ms. Davidson sleeps in a windowless closet adjacent to the gym and the men's bathroom.

144.   Originally Ms. Davidson's sleeping space held lockers.

145.   The union converted the space to a small office with a desk, computer, and filing cabinet.

146.   The District added a twin size bed that fills most of the space.

147.   The District directed the union to share the space with Ms. Davidson for use as her sleeping quarters.

148.   The District refused to provide Ms. Davidson with amenities provided to the men.

149.   The union bought a tiny TV and radio when Davidson moved into the space.

150.   There is general access to where Ms. Davidson sleeps.

151.   Ms. Davidson must leave the door open otherwise the space is too confining.

152.   When Ms. Davidson is sleeping, firefighters and Board members can come into the gym and use the equipment.

153.   The District refused to change the rules and regulations pertaining to the gym. The hours remain 6AM-11PM, seven days a week.

*Summary*

154.   Defendants failed to treat Ms. Davidson as similarly situated male firefighters in

regard to her leave time, paramedic status, and eligibility for promotions.

155.    The Defendants engaged in a pattern and practice of discrimination based on sex, gender, age, and disability.

156.    Defendants continually denied Ms. Davidson equal treatment as a firefighter in her sleeping quarters, her uniform, her eligibility for promotions, and her status as a paramedic.

157.    The Defendants intentionally discriminated against Ms. Davidson because of her sex, gender, age, and disability or perceived disability from injuries obtained in the line of duty.

158.    The Defendants retaliated against Ms. Davidson for alerting the Board of Fire Commissioners about the District's failure to follow section 207-A of the General Municipal Law, and for filing grievances about her unequal and discriminatory treatment.

159.    Defendants acted based on discriminatory animus to prevent an older woman with a disability from a position of authority in the FD; to prevent her from earning stipends for her services to the FD; to frustrate, demoralize, harass, retaliate against, and demean Ms. Davidson.

160.    Defendants' conspired to ultimately remove Ms. Davidson from her career as a firefighter for discriminatory reasons.

161.    The District failed to follow 207-A and properly assist Ms. Davidson's return to work from her line of duty injuries.

162.    The District failed to follow 207-A for Ms. Davidson's line of duty injuries and subsequent treatments because of their discriminatory animus; to demean and harass her; and to prevent her from advancing as a firefighter and paramedic.

163.    Defendants denied Ms. Davidson equal treatment regarding medical coverage and leave entitlement for injuries covered under section 207-A of the General Municipal Law.

164.    Defendants denied Ms. Davidson equal treatment regarding medical coverage and leave entitlement for injuries by retaining her Worker's Compensation awards.

165.    The Defendants have caused Ms. Davidson mental, physical, and emotional pain and suffering as well as the loss of income, benefits, payment for sick and leave time, retirement and other emoluments of employment.

166.    Because of her mistreatment and different treatment, pressure to work when injured, and feelings of inadequacy from repeated trainings above and beyond the norm, Davidson suffers from stress, nausea, headaches, anxiety, and loss of sleep.

167.    Ms. Davidson is undergoing counseling and feels that her career as a firefighter is over based on the actions of the Defendants.

168.    Based on the foregoing, Ms. Davidson charges the above named Defendants with unlawful discriminatory practices as related to employment by denying her equal terms and conditions and privileges of employment and penalizing her because of her sex, gender, age, and disability, and acting in retaliation to discourage her for engaging in protected activity.

## COUNT I

### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e et. seq. (AS AMENDED)

169.    Ms. Davidson repeats and realleges each and every allegation set forth in the above paragraphs, as if fully set forth herein.

170.    Ms. Davidson, a female, is a covered person under Title VII.

171.    Ms. Davidson, at all times relevant herein, was qualified to perform her job as a firefighter.

172.    Defendants subjected Ms. Davidson to pattern and practice discrimination with regard to their policies and procedures.

173.   Defendants' policies and procedures singled out Ms. Davidson in such policies'
application on the prohibited grounds of sex and gender.

174.   Defendants subjected Ms. Davidson to a severe, pervasive hostile work
environment for a period of eight to ten years, continuing to date.

175.   Defendants discriminated against Ms. Davidson because she did not engage in
*quid pro quo* sexual behavior with Board members and District officials.

176.   Defendants retaliated against Ms. Davidson for her complaints of unequal
treatment and discrimination on the basis of sex and gender.

177.   Defendants gave preferential treatment to male firefighters.

178.   Defendants gave preferential treatment to females who engaged in *quid pro quo*
sexual relationships with Board members.

179.   Defendants' actions alleged herein violate Title VII.

## COUNT II

### VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT,
### 29 U.S.C. § 621

180.   Ms. Davidson repeats and realleges each and every allegation set forth in  the
above paragraphs as if fully set forth herein.

181.   Ms. Davidson, aged 50, is a covered person under the ADEA.

182.   Ms. Davidson, at all times relevant herein, was qualified to perform her job as a
firefighter.

183.   Defendants subjected Ms. Davidson to pattern and practice discrimination with
regard to their policies and procedures.

184.   Defendants' policies and procedures singled out Ms. Davidson in such policies'
application on the prohibited grounds of age.

185.    Defendants subjected Ms. Davidson to a severe, pervasive hostile work environment for a period of eight to ten years, continuing to date.

186.    Defendants retaliated against Ms. Davidson for her complaints of unequal treatment and discrimination on the basis of age.

187.    Defendants gave preferential treatment to firefighters under forty years of age.

188.    Defendant's actions as alleged herein violate the ADEA.

## COUNT III

### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 et. seq.

189.    Ms. Davidson repeats and realleges each and every allegation set forth in the above paragraphs as if fully set forth herein.

190.    Ms. Davidson is disabled within the scope of the Americans with Disabilities Act in that she is disabled or is perceived by the Defendants and their agents to be disabled.

191.    Ms. Davidson, at all times relevant herein, was qualified to perform her job as a firefighter, with or without reasonable accommodation.

192.    Defendants subjected Ms. Davidson to pattern and practice discrimination with regard to their policies and procedures.

193.    Defendants' policies and procedures singled out Ms. Davidson in such policies' application on the prohibited grounds of disability.

194.    Defendants subjected Ms. Davidson to a severe, pervasive hostile work environment for a period of eight to ten years, continuing to date.

195.    Defendants retaliated against Ms. Davidson for her complaints of unequal treatment and discrimination on the basis of disability.

196.    The Defendants refused to allow Ms. Davidson to perform her duties with or without a reasonable accommodation.

197.    Defendants gave preferential treatment to non-disabled firefighters.

198.    Defendants actions as alleged herein violate the ADA.

## COUNT IV

### VIOLATION OF 42 U.S.C. § 1983

199.    Ms. Davidson repeats and realleges each and every allegation as if fully set forth herein.

200.    Ms. Davidson is in within the protections afforded by 42 U.S.C. section 1983.

201.    Acting under color of state laws and regulations and in concert with one another, Defendants deprived Ms. Davidson of her rights, privileges, or immunities secured by the U.S. Constitution and violated her rights under the Federal Civil Rights Act based on her sex, gender, age and disability.

202.    Defendants, acting under color of state law, through its policy makers, employees, agents, and assigns, deprived Ms. Davidson of her rights, privileges and immunities secured by the U.S. Constitution by engaging in a course of conduct rising to the level of a policy and practice, thereby violating Ms. Davidson's civil rights under 42 U.S.C. section 1983.

203.    Defendants have used the authority of the government and their offices to retaliate against and punish Ms. Davidson.

204.    The Board and its members as co-conspirators deprived Ms. Davidson of Constitutional rights and such are therefore liable to Ms. Davidson.

205.    As a result of Defendants' acts, Ms. Davidson has suffered and is entitled to damages sustained to date and continuing in excess of the jurisdictional limits of this Court and

to be determined at trial, together with interest, punitive damages, attorney's fees and the costs of this action.

## COUNT V

### VIOLATION OF 42 U.S.C. § 1985

206.    Ms. Davidson repeats and realleges each and every allegation as if fully set forth herein.

207.    The Defendants engaged in a conspiracy for the purpose of depriving the Ms. Davidson the equal protections of the laws, in furtherance of their conspiracy to discriminate and remove Ms. Davidson from her work as a firefighter on the basis of age, disability, sex and gender, without due process of law. As a result, Ms. Davidson sustained physical, emotional and economic injuries through the loss of her employment with the FD.

208.    Defendants' actions were therefore motivated by the intent to injure Ms. Davidson.

209.    Ms. Davidson has established that the Defendants' actions were wholly without legal justification.

210.    Ms. Davidson, over the age of forty (40), female, and having a disability or being perceived as having a disability, is a member of protected classes and therefore is fully afforded the protections of 42 U.S.C. section 1985.

## COUNT VI

### VIOLATION OF 42 U.S.C. 1986

211.    Ms. Davidson repeats and realleges each and every allegation as if fully set forth herein.

212.    Ms. Davidson alleges herein that the Defendants were aware of the conspiracy to discriminate against Ms. Davidson based on her age, sex, gender, and disability but failed to prevent adverse employment actions from occurring.

213.    Ms. Davidson is entitled to the protections of 42 U.S.C. section 1986.

**COUNT VII**

**VIOLATION OF 42 U.S.C. § 1988**

214.    Ms. Davidson repeats and realleges each and every allegation as if fully set forth herein.

215.    Ms. Davidson is entitled to the protection of 42 U.S.C. section 1988 to the extent that Ms. Davidson prevails on her 42 U.S.C. sections 1983, 1985 and 1986 claims.

**COUNT VIII**

**VIOLATION OF ARTICLE 15 OF THE NEW YORK STATE EXECUTIVE LAW ("HUMAN RIGHTS LAW") § 290 et. seq.**

216.    Ms. Davidson repeats and realleges each and every allegation as if fully set forth herein.

217.    Ms. Davidson is covered under Article 15 of the NYS Executive Law section 296, et seq., on the basis of age, sex, gender, disability or perceived disability, and retaliation.

218.    Defendants' actions alleged herein violate Article 15 of the NYS Executive Law section 296, et seq.

**COUNT IX**

**VIOLATION OF GENERAL MUNICIPAL LAW SECTION 207-A**

219.    Petitioner repeats and re-alleges each and every allegation set forth in the above paragraphs inclusive, as if fully set forth herein.

220.    Petitioner is within the protections afforded by General Municipal Law section 207-A as a firefighter and employee of the Defendants.

221.    General Municipal Law section 207-A grants "payment of salary, wages, medical and hospital expenses of firemen with injuries or illness incurred in the performance of duties."

222.    The Defendants' conversion of Ms. Davidson's 207-A leave and benefits to sick time is in direct violation of

223.    Defendants denied Ms. Davidson benefits under 207-A.

224.    Under 207-A, Ms. Davidson should have received full pay without charge to her leave entitlements for time needed to recover from injuries sustained on duty.

225.    Defendants failed to cover recommended medical procedures and treatment under 207-A.

226.    Defendants denied Ms. Davidson due process pursuant to 207-A.

227.    As a result of Defendants' acts, Petitioner has suffered and is entitled to damages sustained to date and continuing, together with interest, attorney's fees, and costs of this action.

<u>COUNT X</u>

**INTENTIONAL INFLICTION OF EMOTIONAL HARM**

228.    Ms. Davidson repeats and realleges each and every allegation as if fully set forth herein.

229.    Defendants' and their agents' actions constitute intentional infliction of emotional harm.

230.    Davidson has suffered severe emotional and psychological damage from Defendants' actions.

## COUNT XI

### NEGLIGENT INFLICTION OF EMOTIONAL HARM

231.    Ms. Davidson repeats and realleges each and every allegation as if fully set forth herein.

232.    Defendants' and their agents' actions constitute negligent infliction of emotional harm.

233.    Davidson has suffered severe emotional and psychological damage from Defendants' actions.

234.    No prior applications for relief sough herein have been made to this or any other Court for the relief sought herein.

\*    \*    \*

**WHEREFORE**, Deborah Davidson demands judgment against the Defendants on all the Counts as follows:

a.    Declaring that the employment practices complained of in this complaint are unlawful in that they violate the Age Discrimination Employment Act of 1967, 29 U.S.C. §621 et seq.; the Americans With Disabilities Act of 1990, 42 U.S.C. 12101 et seq.; Title VII of the Civil Rights Act of 1990, 42 U.S.C. 2000e et. seq.; the Rehabilitation Act sections 504, or 29 U.S.C. § 794; 42 U.S.C. §§ 1983, 1985, 1986, and 1988; New York General Municipal Law § 207-A; and Article 15 of the New York State Executive Law § 296;

b.    permanently enjoining the Defendants and their agents, officers, and employees from engaging in all practices found by this Court to be in violation of the statutes stated in paragraph (a) above;

c.    against Defendants LaGrange Fire District and the Board of Fire Commissioners of LaGrange Fire District on each cause of action for a sum to be determined, including compensation, damages, mental anguish, emotional harm and punitive damages sustained by Ms. Davidson, the precise amount to be determined by trial;

d.    ordering the Defendants to compensate Ms. Davidson for lost 207-A benefits and leave entitlements with all emoluments of employment with interest thereon;

e.    ordering the Defendants to comply with 207-A going forward, holding them punishable by contempt for failing to do so;

f.    ordering the Defendants to promote Ms. Davidson retroactively to the position of Lieutenant, with all back pay, benefits, and emoluments of employment with interest thereon;

g.       granting Ms. Davidson such other and further relief as the Court deems just and proper, as well as the costs and disbursements of this action;

h.       retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendants to file such reports as the Court deems necessary to evaluate such compliance;

i.       order the Defendants to pay Ms. Davidson's costs and expenses and reasonable attorney's fees in connection with this action; and

j.       Ms. Davidson demands a trial by jury of all issues.

Dated: Garden City, New York
March 18, 2008

Law Offices of Louis D. Stober, Jr. LLC

By: LOUIS D. STOBER, JR (LS 9318)
Attorney(s) for Ms. Davidson
350 Old Country Road
Suite 205
Garden City, New York 11530
(516) 742-6546

## VERIFICATION

STATE OF NEW YORK    )
                          : SS.:
COUNTY OF DUTCHESS  )

DEBORAH A. DAVIDSON, being duly sworn says:

I am the Plaintiff in this proceeding.  I have read the annexed Complaint, know

the contents thereof, and the same is true to my knowledge, except those matters therein

which are stated to be alleged on information and belief, and as to those matters, I believe

them to be true.

_____
DEBORAH A. DAVIDSON

Sworn to this 20 day of March, 2008

_____
NOTARY PUBLIC

MICHELE M. LIEBERMAN
Notary Public, State of New York
No. 4994578
Qualified in Dutchess County
Commission Expires April 6, 2010